**Robert SMITH, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 49A02-8608-CR-295.**

Court of Appeals of Indiana,
Second District.

March 18, 1987.

---

Michael R. Fisher, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

### CASE SUMMARY

Defendant-appellant Robert Smith (Smith) appeals his conviction of possession of marijuana in an amount greater than thirty grams,[1] a class D felony, claiming the trial court erred in denying his motion to suppress, and that the verdict was not supported by sufficient evidence.

We affirm.

---

1. Ind.Code 35–48–4–11 (1986).

## FACTS

On April 1, 1985, Indianapolis police officers Robert Fisher (Fisher), Tommy Terrell (Terrell), and James Wurz (Wurz) [collectively referred to as the officers] drove to 3048 North Central in response to a tip from a reliable, confidential informant that marijuana was being sold at that address. While the officers observed the residence from their two unmarked police cars, Fisher saw Smith leave the house carrying two plastic baggies containing suspected marijuana. Smith got into the back seat of a vehicle which had stopped at the house shortly after the police officers arrived. As the officers approached the vehicle, Fisher saw Smith place the two baggies on the automobile's console between two people in the front seat. The officers ordered the three from the vehicle, seized the baggies, and arrested Smith.

Immediately following the arrest, Smith asked the officers if he could return to the house and get his jacket. Accompanied by the officers, Smith used a key, opened the front door, and told Fisher that his jacket was in his bedroom. When Fisher and Wurz entered Smith's bedroom, they noticed several small envelopes and plastic bags containing suspected marijuana on the bed. Terrell seized the baggies and envelopes. Laboratory tests revealed that the baggies recovered from the automobile and the bed contained 65.8 grams of marijuana.

The trial court denied Smith's pretrial motion to suppress and following a bench trial, he was found guilty of possession of marijuana in an amount greater than thirty grams.

Smith presents two issues for our review which we have restated as follows:

1. Did the trial court err in admitting the marijuana seized from the automobile and the bedroom?
2. Whether the evidence was sufficient to support the conviction?

## DECISION

ISSUE ONE—Did the trial court err in admitting the marijuana seized from the automobile and the bedroom?

PARTIES' CONTENTIONS—Smith contends that the trial court erred in admitting the marijuana into evidence because it was the fruit of an illegal search.

The State responds that the marijuana was properly admitted since it was in plain view.

CONCLUSION—The trial court did not err in admitting the marijuana into evidence.

As our supreme court recognized in *Garrett v. State* (1984), Ind., 466 N.E.2d 8, the police have a right to make an investigatory stop of an individual on foot, if at the time of the stop, a man of reasonable caution would believe that further investigation was appropriate. While it is not necessary that police have probable cause for an arrest when making such a stop, the reasonableness of the warrantless intrusion depends upon specifically articulable facts and reasonable inferences from those facts which warrant the suspicion of unlawful conduct. *Id.; see also Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

■ Before the officers approached Smith, Fisher observed him carrying two baggies which appeared to contain marijuana. At that point, Fisher, as an experienced police officer, could have reasonably inferred that Smith was engaging or had engaged in criminal activity which would permit police to stop Smith and conduct further investigation. *See Garrett, supra; Gipson v. State* (1984), Ind., 459 N.E.2d 366. Moreover, when the officers approached the vehicle, they again viewed the substance in the interior of the car as Smith placed it on the console.

■ It is settled law that objects observed in plain view by a police officer who is lawfully in a position to have such a view are not products of a "search" within the meaning of the Fourth and Fourteenth Amendments. *See, e.g., Alcorn v. State* (1970), 255 Ind. 491, 265 N.E.2d 413; *Morgan v. State* (1981), Ind.App., 427 N.E.2d 14. The officers lawfully approached the vehicle and made no search to obtain the evidence. Rather, the officers

observed the marijuana in open view as Smith left the house and subsequently placed it on the automobile's console. The ready conclusion is that the marijuana was properly seized and admitted into evidence.

█ The trial court also properly admitted the marijuana seized from Smith's bedroom. Following the arrest, Smith asked permission to return to the house so he could get a jacket. Once inside, Smith directed Fisher to an upstairs bedroom where Smith said his jacket could be found. As Fisher walked into the room, he saw the envelopes and plastic bags containing suspected marijuana on top of the bed.

Fisher and the other officers were authorized to accompany Smith into the house for the purpose of retrieving his jacket. Although Smith did not orally consent to the officers' initial entry, the United States Supreme Court recognized in *Washington v. Chrisman* (1982), 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 that:

> "The absence of an affirmative indication that an arrested person might have a weapon available or might attempt to escape does not diminish the arresting officer's authority to maintain control over the arrested person....
>
> Every arrest must be presumed to present a risk of danger to the arresting officer.... There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger. Moreover, the possibility that an arrested person will attempt to escape if not properly supervised is obvious....
>
> We hold, therefore, that it is not 'unreasonable' under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to insure his own safety—as well as the integrity of the arrest—is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested."

*Id.*, at 6–7, 102 S.Ct. at 816–817 (citations omitted).

In addition to the officer's authority to maintain control over the arrested person, it may also reasonably be inferred that his presence was impliedly consented to by Smith. He could not reasonably expect them to release him unguarded in response to his request to obtain his jacket inside the house. As our supreme court recognized in *Phillips v. State* (1986), Ind., 492 N.E.2d 10, "[c]onsent to entry is generally valid except when it is procured by fraud, duress, fear, intimidation, or when it is merely a submission to the supremacy of the law." *Id.* at 18. ,Conduct may constitute an invitation to enter, *Jones v. State* (1980), Ind.App., 409 N.E.2d 1254, and there was no evidence that might indicate implied consent was initiated by improper police conduct.

Because Fisher and Wurz were lawfully in Smith's bedroom when they inadvertently discovered the marijuana in plain view, the trial court properly admitted this evidence. Accordingly, Smith's motion to suppress was properly denied.

ISSUE TWO—Whether the evidence was sufficient to support the conviction?

CONCLUSION—The evidence was sufficient to support the conviction.

█ Possession of a controlled substance may be founded on either actual or constructive possession. *Martin v. State* (1978), 175 Ind.App. 503, 372 N.E.2d 1194. The evidence most favorable to the judgment indicates that Fisher, Wurz, and Terrell observed Smith carry the marijuana from the house and place it on the automobile console. This is enough to show that Smith had actual possession of that marijuana. *See, e.g., Wilburn v. State* (1982), Ind., 442 N.E.2d 1098 (actual possession of drugs is demonstrated by a showing that the accused had an intent and capability of maintaining dominion and control over the item).

█ The evidence was also sufficient to support Smith's conviction for possessing the marijuana which was seized on the bed. The Indiana Supreme Court has defined constructive possession as the "intent and capability to maintain control and dominion" over the substance. *Thomas v.*

*State* (1973), 260 Ind. 1, 291 N.E.2d 557, 558. The requisite intent can be inferred from the voluntary commission of the act. Thus, the evidence must establish knowledge both of the item's presence and of its forbidden character. *Martin, supra.* When an accused does not have exclusive control of the premises, it may not be inferred that he knew of the presence of the drugs and had control of them, unless there are other incriminating statements or circumstances tending to support such an inference. There must be additional evidence, apart from that of a defendant's nonexclusive control of the premises, to permit an inference of knowledge. *Id.*

The record reveals that Smith unlocked the front door of the residence with a key he had in his pocket. When entering, Smith directed the officers to *his* bedroom to retrieve *his* jacket. *Record* at 127. Also, the marijuana was in plain view and in close proximity to his jacket. *See Mills v. State* (1975), 163 Ind.App. 608, 325 N.E.2d 472.

Affirmed.

GARRARD, P.J., concurs.

SULLIVAN, J., concurs in result.